No. 24-1494

# United States Court of Appeals

### *for the*

# Fourth Circuit

———————————————

DIANA MEY, on behalf of herself and
a class of others similarly situated,

*Plaintiff-Appellee,*

— v. —

WILLIAM PINTAS; P&M LAW FIRM, LLC;
P&M LAW FIRM (PR), LLC,

*Defendants-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA AT WHEELING

# REPLY BRIEF OF APPELLANTS

Richard W. Epstein
GREENSPOON MARDER LLP
200 East Broward Boulevard
Suite 1800
Fort Lauderdale, FL 33309
(945) 491-1120

Jeffrey Gilbert
GREENSPOON MARDER LLP
600 Brickell Avenue
Miami, FL 33131
(305) 789-2761

Jared M. Tully
Blake N. Humphrey
FROST BROWN TODD LLP
500 Virginia Street E
Suite 1100
Charleston, WV 25301
(304) 345-0111

*Counsel for Appellants William Pintas,
P&M Law Firm, LLC and P&M Law Firm (PR), LLC*

CP COUNSEL PRESS    (800) 4-APPEAL • (810859)

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ............................................................................................. 1

ARGUMENT .................................................................................................... 1

    I.    Mey's own admissions and allegations reveal that she lacks Article III standing to sue because the calls she received were "wanted." ....................... 1

    II.    Mey has failed to offer a legally sound explanation why the District Court's Anti-Suit Injunction—issued nearly a year after the P&M Law Firm filed suit in the Commonwealth of Puerto Rico—is "necessary in aid of" the District Court's jurisdiction over this case. ................................... 8

    III.    Mey is mistaken—security was required under Rule 65(c). .......................... 16

CONCLUSION ................................................................................................. 18

CERTIFICATE OF COMPLIANCE ........................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ackerman v. ExxonMobil Corp.*,
   734 F.3d 237 (4th Cir. 2013) .................................................................. 17

*Ali v. Hogan*,
   26 F.4th 587 (4th Cir. 2022) .................................................................. 8

*Amalgamated Clothing Workers of Am. v. Richman Bros.*,
   348 U.S. 511 (1955) .............................................................................. 15

*Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers*,
   398 U.S. 281 (1970) ...................................................................*passim*

*Baaith v. Bank of Am., N.A.*,
   2017 WL 11068544 (N.D. Ga. July 21, 2017) ...................................... 17

*Baehr v. Creig Northrop Team, P.C.*,
   953 F.3d 244 (4th Cir. 2020) .................................................................. 8

*Bechtel Petroleum, Inc. v. Webster*,
   796 F.2d 252 (9th Cir. 1986) .................................................................. 15

*Beyond Systems, Inc. v. Kraft Foods, Inc.*,
   777 F.3d 712 (4th Cir. 2015) .................................................................. 6

*Bradley v. Fed. Nat'l Mortg. Ass'n*,
   2011 WL 5320746 (N.D. Ga. Sept. 28, 2011) ...................................... 14

*Casillas v. Madison Ave. Assoc., Inc.*,
   926 F.3d 329 (7th Cir. 2019) (Barrett, J.) .......................................... 3

*Caulder v. Durham Housing Authority*,
   433 F.2d 998 (4th Cir. 1970) .................................................................. 16

*Chick Kam Choo v. Exxon Corp.*,
   486 U.S. 140 (1988) .............................................................................. 15

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) .............................................................................. 6

*In re Baldwin-United Corp.*,
  770 F.2d 328, 339 (2d Cir. 1985) .......................................................... 12, 16

*In re Corrugated Container Antitrust Litig.*,
  659 F.2d 1332 (5th Cir. 1981) ..................................................................... 13

*In re Diet Drugs*,
  282 F.3d 220 (3d Cir. 2002) ........................................................................... 9

*In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*,
  369 F.3d 293 (3d Cir. 2004) .................................................................. 13, 15

*In re: Prudential Ins. Co. of Am. Sales Practice Litig.*,
  261 F.3d 355 (3d Cir. 2001) ........................................................................ 10

*District 17, UMWA v. A & M Trucking, Inc.*,
  991 F.2d 108 (4th Cir. 1993) ....................................................................... 18

*Employers Res. Mgmt. Co., Inc. v. Shannon*,
  65 F.3d 1126 (4th Cir. 1995) ....................................................................... 10

*Hanover Am. Ins. Co. v. Tattooed Millionaire Entertainment, LLC*,
  38 F.4th 501 (6th Cir. 2022) .................................................................. 10, 11

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*,
  174 F.3d 411 (4th Cir. 1999) .................................................................. 16, 18

*Krakauer v. Dish Network, L.L.C.*,
  925 F.3d 643 (4th Cir. 2019) ...................................................................... 3, 4

*Leyse v. Bank of Am. Nat. Ass'n*,
  804 F.3d 316 (3d Cir. 2015) .......................................................................... 3

*Maseda v. Honda Motor Corp.*,
  861 F.2d 1248 (11th Cir. 1988) ................................................................... 11

*Mey v. Got Warranty, Inc.*,
  193 F. Supp. 3d 641 (N.D. W. Va. 2016) ...................................................... 3

*Mironescu v. Costner*,
  480 F.3d 664 (4th Cir. 2007) ....................................................................... 11

*Nat'l Family Planning & Reproductive Health Ass'n, Inc. v. Gonzales*,
  468 F.3d 826 (D.C. Cir. 2006) ....................................................................... 6

*New England Anti-Vivisection Soc'y v. United States Fish & Wildlife Serv.*,
208 F. Supp. 3d 142 (D.D.C. 2016) ................................................... 6

*Penegar v. Liberty Mutual Insurance Company*,
--- F.4th ----, 2024 WL 3852278, at *3 (4th Cir. Aug. 19, 2024) ............................... 6

*Phillips v. Chas. Schreiner Bank*,
894 F.2d 127 (5th Cir. 1990) ................................................... 13, 17

*Sandpiper Vill. Condo. Ass'n., Inc. v. Louisiana-Pac. Corp.*,
428 F.3d 831 (9th Cir. 2005) ................................................... 9

*Spokeo, Inc. v. Robbins*,
578 U.S. 330 (2016) ................................................... 2, 3

*Sprint Commc'ns, Inc. v. Jacobs*,
571 U.S. 69 (2013) ................................................... 10

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ................................................... 2, 3

*Ungar v. Mandell*,
471 F.2d 1163 (2d Cir. 1972) ................................................... 14

*Vendo Co. v. Lektro-Vend Corp.*,
433 U.S. 623 (1977) ................................................... 15

*Vick v. Rodriguez*,
2022 WL 1063890 (D.P.R. Apr. 8, 2022) ................................................... 10

## Statutes and Other Authorities

U.S. Const. Art. III. § 2 ................................................... 1

Fed. R. Civ. P. 65 ................................................... 16, 17, 18

Anti-Injunction Act, 28 U.S.C. § 2283 ................................................... *passim*

All Writs Act, 28 U.S.C. § 1651 ................................................... *passim*

Camp Lejune Justice Act of 2022 ................................................... 4

Telephone Consumer Protection Act ................................................... *passim*

Melissa Chan, *Few victims of Camp Lejeune's water poisoning have found justice as the final deadline for claims nears*, NBC NEWS (Aug. 4, 2024), https://www.nbcnews.com/news/us-news/victims-camp-lejeunes-water-poisoning-found-justice-final-deadline-cla-rcna164572 ................................. 5

## **INTRODUCTION**

Chockfull of manifest aggression and unconcealed personal hostilities, Plaintiff Diana Mey's response brief seeks to avert this Court's attention from the *remarkable* nature of her own conduct which gave rise to this *unprecedented* interlocutory appeal.[1] But her efforts are unavailing and the fundamental realities of this case remain fully intact: (1) Mey lacks Article III standing to sue in federal court because she *wanted* the calls that she received; and (2) in the alternative, the District Court's Anti-Suit Injunction—which plainly runs afoul of the Anti-Injunction Act, 28 U.S.C. § 2283 (the "AIA") and otherwise improperly enjoins *ongoing* state court proceedings—cannot survive or withstand appellate review. **REVERSAL** is therefore warranted.

## **ARGUMENT**

### I. **Mey's own admissions and allegations reveal that she lacks Article III standing to sue because the calls she received were "wanted."**

Article III of the Constitution *limits* the jurisdiction of federal courts to resolving "Cases" and "Controversies." *See* U.S. Const. Art. III. § 2. As this Court recently

---

[1] Glossing over her *own* misconduct and deception, Mey uses charged words like "underhanded," "deceit," "abusive," and "vexatious" to describe the Puerto Rico Law Firm's decision to file suit against her in the Commonwealth of Puerto Rico. *See* Br. of Appellee 9, 11, 21, 39, 43. She also continues referring to the Puerto Rico Court as a "far-flung jurisdiction," *see* Br. of Appellee 1, insinuating that tribunal is not capable of resolving the Puerto Rico Lawsuit. Perhaps most gratuitously of all, however, Mey baselessly refers to the Puerto Rico Law Firm as a "tax shelter." *See* Br. of Appellee 10, 42. Even as the District Court acknowledged at the TRO Hearing, these types of inflammatory and errant comments have no place in this legal discourse. *See* JA99 ("MR. BARALT: This whole notion to inflame emotions here [is] that my client somehow is avoiding US taxes in Puerto Rico --" "THE COURT: Don't worry about that." "MR. BARALT: US tax laws don't apply to Puerto Rico. That's a decision by Congress.").

explained in *Penegar v. Liberty Mutual Insurance Company*, "[a] plaintiff has standing if he shows: '(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief.'" *See* --- F.4th ----, 2024 WL 3852278, at \*3 (4th Cir. Aug. 19, 2024). "[A]n injury in fact must be both concrete and particularized." *Id.* As the *Penegar* Court explained, injury is "particularized" if it "affects the plaintiff in a personal and individual way." *Id.* (internal quotation marks omitted). And an injury is "*only* concrete if it is real and not abstract." *Id.* (emphasis added).

Importantly, as emphasized by this Court in *Penegar*, although Congress can "elevate harms that were previously insufficient to justify suit to actionable legal status via statutory causes of action," Congress *cannot* "override Article III and expand federal court jurisdiction beyond its constitutional confines." *See* --- F.4th ----, 2024 WL 3852278, at \*3 (internal quotation marks omitted). Indeed, "[n]o matter what right or cause of action a statute may grant a plaintiff, she must still have an injury in fact to sue in federal court." *Id.*; *see also Spokeo, Inc. v. Robbins*, 578 U.S. 330, 341 (2016) ("Article III standing requires a concrete injury even in the context of a statutory violation."); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426-27 (2021) ("[A]n important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law."). And that is so because "Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a

freewheeling power to hold defendants accountable for legal infractions." *See Casillas v. Madison Ave. Assoc., Inc.*, 926 F.3d 329, 332 (7th Cir. 2019) (Barrett, J.).

Suffice it to say, the foregoing authorities stand for the proposition that a plaintiff pursuing a statutory violation must still have a concrete and particularized injury-in-fact. Relying chiefly on this Court's decision in *Krakauer v. Dish Network, L.L.C.*, Mey insists that she—and not "Rhonda Nicholson"—has Article III standing to sue because Mey received "unwanted" calls in February 2023. *See* Br. of Appellee 27 (citing *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 653 (4th Cir. 2019)).[2] This alone, Mey proclaims, is the source of her injury and bestows upon her standing to sue under Article III.

Notwithstanding *Spokeo* and *TransUnion*, this Court's decision in *Krakauer*—along with decisions of other courts—does stand for the proposition that, for a plaintiff to have Article III standing to sue under the Telephone Consumer Protection Act ("TCPA"), she "must have received *unwanted* calls on multiple occasions." *See* 925 F.3d at 653 (emphasis added). That is so, the *Krakauer* Court explained, because "[t]he statute requires that an individual receive a call on [her] own residential number, a call that [she] *previously took steps to avoid*." *Id.* (emphasis added); *see also Mey v. Got Warranty, Inc.*, 193 F. Supp. 3d 641 (N.D. W. Va. 2016) ("[U]nwanted phone calls cause concrete harm.").

---

[2] Of course, we know that "Rhonda Nicholson"—whoever this "individual" might be—received and answered the allegedly uninvited calls. JA13. And "Rhonda" was otherwise the "actual recipient" of the calls. *See, e.g.*, *Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316, 326 (3d Cir. 2015) (recognizing that "[i]t is the *actual recipient*, intended or not, who suffers the nuisance and invasion of privacy" (emphasis added)).

Fatally for Mey, however, the allegations set forth in the Complaint paint a different picture than *Krakauer*—as the P&M Defendants have argued, the supposedly "unwanted" calls that Mey (as "Rhonda") received in February 2023 were very much *wanted*, if not invited. *See* JA11 (Complaint describing Mey as a "a tenacious consumer advocate with a reputation for honesty and integrity"); JA12 (Complaint describing Mey's so-called advocacy "efforts"—which include use of pre-suit threats and demands to extract *individual* settlements from alleged violators of the TCPA—and indicating that Mey has recovered "millions of dollars for numerous nationwide classes"). Unlike in *Krakauer*, the totality of misconduct here actually reveals that "Rhonda" *wanted* the calls so Mey could seek out an *individual* settlement from the P&M Defendants.

For starters, Mey—who is admittedly a prolific TCPA litigant—posits that she mysteriously received uninvited telemarketing calls to her residential telephone, which she alleges is on the National "Do-Not-Call" Registry. After receiving the first call at 12:54 PM EST on February 8, 2023, Mey conveniently utilized the fake imposter pseudonym of "Rhonda Nicholson" to misleadingly solicit benefits under the Camp Lejune Justice Act of 2022. *See* JA168-169.[3] To be sure, Mey gave the initial caller a fake name ("Rhonda"), a fake home address in Illinois, and actually *invited* a second call.

---

[3] Along these lines, Mey claims that the P&M Defendants' "telemarketing vendors used generic, fabricated names and titles designed to obscure their true identity." *See* Br. of Appellee 7. But this is just Mey's own *speculation*—there is no competent evidence in the record that these individuals go by another name or title.

4

JA169.[4] Not only that, but in subsequent calls, Mey concocted more details of the fabricated story regarding "Rhonda's" life and why "Rhonda" would be entitled to federal benefits. *See* JA203.[5] After inviting *dozens* of calls, Mey weaponized a supposed statutory violation to extract an *individual* settlement roughly 260 times the amount of the TCPA statutory penalty for such a violation, even though her imposter identity "Rhonda" consented to and welcomed these supposedly unwanted calls. *See* JA151.[6]

---

[4] This point is both telling and important—although Mey claims that she consented to the calls "[o]nly at the conclusion of the *third* call," *see* Br. of Appellee 30, during the very first call on February 8, 2023, Mey actually invited a *second* call, which she received at 1:54 PM EST on February 8, 2023, *see* JA169 (CALLER: "So ma'am, now within two to five minutes you'll receive the call from Mr. David, he will definitely help you, okay?" MEY (a/k/a "Rhonda"): "Mr. who?" CALLER: "Please do take the call okay? You have a wonderful . . . David Smith. Okay?" MEY: "Okay.").

[5] The sad reality is that, while Mey was engaging the "Rhonda" cosplay to extract an individual TCPA settlement by fabricating "Rhonda's" life story to obtain federal Camp Lejune benefits, "[f]ew victims of Camp Lejune's water poisoning have found justice as the final deadline for claims" lapsed on August 10, 2024. *See* Melissa Chan, *Few victims of Camp Lejeune's water poisoning have found justice as the final deadline for claims nears*, NBC NEWS (Aug. 4, 2024), https://www.nbcnews.com/news/us-news/victims-camp-lejeunes-water-poisoning-found-justice-final-deadline-cla-rcna164572.

[6] Mey claims that it is "largely irrelevant" that she sought from the P&M Defendants an "individual settlement demand." *See* Br. of Appellee 8. But as it relates to this analysis—*i.e.*, whether the calls were *wanted* and for what *reason*—it is highly relevant that Mey's self-professed motive was to extract an *individual* settlement. In a closely related fashion, Mey suggests that, by utilizing the fake "Rhonda" imposter persona, she was merely "feign[ing] interest" in obtaining benefits under the Camp Lejune Justice Act of 2022 and that her primary objective was to "identify the parties responsible for placing those calls." *See* Br. of Appellee 6. At best, this shows Mey was providing false information because she *wanted* these calls. But at worst, this shows it is unclear to what extent Mey was willing to go to falsely obtain federal benefits.

Mey attempts to guard against this outcome by claiming that the calls to "Rhonda" were still unwanted. *See* Br. of Appellee 25-26. Yet in so doing, Mey avoids grappling with her *own* conduct in inviting any alleged harm: during the supposedly uninvited "first call," Mey—moonlighting as "Rhonda"—told the caller it was "Okay" to receive a second call. JA169. That Mey does not have Article III standing to sue is consistent with case law that stands for the unremarkable and commonsense proposition that self-inflicted harm cannot, and thus does not, confer Article III standing to sue in federal court. *See Nat'l Family Planning & Reproductive Health Ass'n, Inc. v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006) (explaining that self-inflicted harm can neither be deemed "an injury cognizable under Article III" nor "fairly traceable to the defendant's challenged conduct"); *New England Anti-Vivisection Soc'y v. United States Fish & Wildlife Serv.*, 208 F. Supp. 3d 142 (D.D.C. 2016) ("[I]t is well established that an injury one brings upon oneself is not a cognizable injury that has been caused by the defendant's conduct."). Indeed, the Supreme Court has remarked that plaintiffs—even experienced ones like Mey—cannot "manufacture [Article III] standing merely by inflicting harm on themselves." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013).

Along these lines, consider this Court's decision in *Beyond Systems, Inc. v. Kraft Foods, Inc.*, 777 F.3d 712 (4th Cir. 2015). There, the Court aptly explained that someone who "'gratuitously create[s] circumstances that would support a legal claim and acted with the chief aim of collecting a damage award'" does not have Article III standing to sue in federal court. *Id.* at 719, n.2 (quoting *Gordon v. Virtumundo*, 575 F.3d 1040, 1068

(9th Cir.2009) (Gould, J., concurring)). On this record, it is evident that Mey created a fake pseudonym—as she freely and candidly admits—for the purpose of tracing *wanted* telemarketing calls that she could use to pursue *individual* settlements related to alleged TCPA violations.[7]  In other words, Mey "gratuitously created circumstances that would support a legal claim." *Id.* This dooms Mey's ability to claim Article III standing here.

In further response, Mey suggests that the "issue of consent is a merits-based defense, not an obstacle to Article III standing." *See* Br. of Appellee 29. For support, Mey relies on *Romero v. Department Stores National Bank* for the proposition that "[d]isputes regarding whether [a plaintiff] gave prior express consent to receive calls from the [defendants] or revoked that consent go to the merits of her TCPA claim, not to her standing." *See* 725 Fed. App'x 537, 539 (9th Cir. 2018). While consent is certainly a merits-based defense that the P&M Defendants would raise, the issue here is even more fundamental—Mey's *consent* to the telemarketing calls, along with the totality of her misconduct, demonstrates that she *wanted* these calls so she could *benefit* from them.

Finally, it bears reemphasizing that Count I of the Complaint is devoid of *any* factual allegations that Mey *personally* suffered an injury-in-fact necessary to confer

---

[7] Mey attempts to justify this type of deceptive misconduct by citing a string of cases in a footnote for the proposition that "numerous courts have endorsed plaintiffs posing as interested consumers in order to identify the source of illegal calls." *See* Br. of Appellee 6, n.3.  Revealingly, out of all the cases Mey string cites in this footnote, *none* of them contemplated a professional TCPA plaintiff consenting to calls and then using a fake pseudonym (*i.e.*, "Rhonda Nicholson") to disguise *the recipient's* true identity, as opposed to merely using subterfuge to identify *the caller's* true identity.

Article III standing. "Where, as here, a case is at the pleading stage, the plaintiff must clearly . . . allege facts demonstrating" each element of a claim. *See Spokeo*, 578 U.S. at 338. The Complaint merely alleges that "Mey did not consent to receive the calls, nor did she have any established business relationship with any of the Defendants." JA24. There are *no* other factual allegations in Count I—or anywhere else in the Complaint— that Mey *personally* suffered harm or injury because of the calls. *See Ali v. Hogan*, 26 F.4th 587, 596 (4th Cir. 2022) (recognizing that Article III injury-in-fact analysis is governed by the "factual allegations" in the complaint). Mey consequently lacks Article III standing to pursue a TCPA claim. *See Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244, 252 (4th Cir. 2020) (recognizing that a "bare procedural violation, divorced from any concrete harm," does not "satisfy the injury-in-fact requirement of Article III").

## II.     Mey has failed to offer a legally sound explanation why the District Court's Anti-Suit Injunction—issued nearly a year *after* the P&M Law Firm filed suit in the Commonwealth of Puerto Rico—is "necessary in aid of" the District Court's jurisdiction over *this* case.

Moving on, Mey's response fails to offer *any* cognizable legal basis to support the District Court's Anti-Suit Injunction. While the parties seem to agree that the All Writs Act generally empowers a federal district court to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law," *see* 28 U.S.C. § 1651, the parties strenuously disagree whether the Anti-Injunction Act (the "AIA")—which *prohibits* injunctions "to stay proceedings in a State court *except* [1] as expressly authorized by Act of Congress, or [2] where necessary

in aid of its jurisdiction, or [3] to protect or effectuate its judgments," *see* 28 U.S.C. § 2283—provides a legally cognizable and sound basis for the District Court to enjoin the *ongoing* Puerto Rico Lawsuit. Stated succinctly, the answer is resoundingly *no*.

At the outset, it is worth dispelling of Mey's lure that the All Writs Act, by hook or by crook, somehow supplies a federal district judge with a "roving writ" to enjoin ongoing state court proceedings, even if the injunctive award does not fit within one of the AIA's three narrow exceptions. *See generally* Br. of Appellee 31-32. That is not how the All Writs Act operates. As the P&M Defendants have already explained, the authority the All Writs Act imparts to district courts is sharply *circumscribed* by the AIA. *See* Br. of Appellant 27; *see also Sandpiper Vill. Condo. Ass'n., Inc. v. Louisiana-Pac. Corp.*, 428 F.3d 831 (9th Cir. 2005) (explaining that "[t]he All Writs Act is limited by the Anti-Injunction Act"); *In re Diet Drugs*, 282 F.3d 220, 233 (3d Cir. 2002) (recognizing that "[t]he power granted by the *All Writs Act is limited by the Anti–Injunction Act*, 28 U.S.C. § 2283, which prohibits, with certain specified exceptions, injunctions by federal courts that have the effect of staying a state court proceeding" (emphasis in original)).

In light of this clarification, Mey has conceded that the *only* AIA exception at issue here is the second, which permits a federal court to enjoin state court proceedings "where necessary in aid of its jurisdiction[.]" *See* 28 U.S.C. § 2283; *see also* Br. of Appellee

33 ("Here, the requested injunction falls within the second exception[.]").[8] As it relates to this second AIA exception, the United States Court of Appeals for the Sixth Circuit has concluded that the "necessary in aid of jurisdiction" exception applies *only* in two situations: (1) "when the case is removed from state court" or (2) "where the federal court has *in rem* or *quasi in rem* jurisdiction over specific property." *See Hanover Am. Ins. Co. v. Tattooed Millionaire Entertainment, LLC*, 38 F.4th 501, 508 (6th Cir. 2022); *In re: Prudential Ins. Co. of Am. Sales Practice Litig.*, 261 F.3d 355, 365 (3d Cir. 2001).[9]

---

[8] Despite making this concession, Mey speculates there *could* be a "fourth exception" to the AIA. *See* Br. of Appellee 33 ("In addition, courts have also recognized a fourth exception justifying intervention . . . where there has been an adequate showing of irreparable injury." (internal quotation marks omitted)). For starters, the leading case Mey cites for this unfounded proposition—*Vick v. Rodriguez*, 2022 WL 1063890 (D.P.R. Apr. 8, 2022)—is factually inapposite. *Vick* recognized this so-called "fourth exception" in the context of *Younger* abstention, which primarily *limits* a federal court's ability to interfere with pending and ongoing state *criminal* proceedings. *See, e.g.*, *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013) ("*Younger* exemplifies one class of cases in which federal-court abstention is required: When there is a parallel, pending state criminal proceeding, federal courts must refrain from enjoining the state prosecution.").

Putting this important factual distinction to the side, Mey's *suggestion* that the AIA creates a "fourth exception" also plainly runs afoul of this Court's dutiful recognition that the AIA's *three* exceptions "are construed narrowly, . . . and are not [to] be enlarged by loose statutory construction." *See Employers Res. Mgmt. Co., Inc. v. Shannon*, 65 F.3d 1126, 1130 (4th Cir. 1995) (internal quotation marks omitted). That is so because, in the seminal case of *Atlantic Coast Line Railroad Co. v. Brotherhood of Locomotive Engineers*, the Supreme Court explicitly recognized that the AIA "is an absolute prohibition . . . against enjoining state court proceedings, unless the injunction falls within one of *three* specifically defined exceptions." *See* 398 U.S. 281, 286 (1970) (emphasis added).

[9] Tellingly, Mey's response does not even cite or mention *Hanover*. Nor does it offer any meaningful explanation *why* the rule enunciated in *Hanover* should not apply and control this Court's analysis of *when* the AIA's second exception applies. Mey has (Continued)

In these circumstances, this is *not* an instance in which Mey removed an action from state court to federal court and the state court continued apace. Nor is this an instance where the District Court has either *in rem* or *quasi in rem* jurisdiction over a specific piece of property that would be threatened by the ongoing state court litigation. As a result, pursuant to *Hanover*—which this Court should adopt—the District Court's Anti-Suit Injunction simply does *not* fall within the AIA's second narrow exception.

Resisting this straightforward conclusion, Mey's response posits that *some* "courts have nonetheless extended the [second AIA] exception to in personam proceedings." *See* Br. of Appellee 35. Yet the cases Mey cites are wholly inapposite. For starters, *Sycuan Band of Mission Indians v. Roache* did not even address the AIA's second exception—rather, the Ninth Circuit concluded that state officials had taken "action in derogation of exclusive federal jurisdiction," which it explained struck at the heart of the *first* and *third* AIA exceptions (not the second). *See* 54 F.3d 535 (9th Cir. 1994), *as amended on denial of reh'g* (Apr. 28, 1995). Meanwhile, another case that Mey cites—the Eleventh Circuit's decision in *Maseda v. Honda Motor Corp.*, 861 F.2d 1248 (11th Cir. 1988)—is equally unavailing and does nothing to alter the analysis in this appeal. There, the district court issued an injunction under the AIA's second exception because the state court continued with its proceedings after *removal* to federal court. *Id.* at 1256 ("This case was removed to federal court which terminated the jurisdiction of the state court.").

---

thus waived any argument in this respect. *See, e.g.*, *Mironescu v. Costner*, 480 F.3d 664, 677 n.15 (4th Cir. 2007) ("Even appellees waive arguments by failing to brief them").

Likely sensing the palpable legal weakness of her position, Mey proceeds to engage in a pages-long effort to denigrate and delegitimize the Puerto Rico Lawsuit and the Puerto Rico Court. *See* Br. of Appellee 36-39. But these unfounded attacks are nothing more than a school of red herrings—as the P&M Defendants have argued all along, if Mey has issues with the Puerto Rico Lawsuit (or if she questions its legitimacy), she *must* address those issues with the Puerto Rico Court. Under the guise of the AIA's second narrow exception, Mey cannot call on the District Court for *preemptive* rulings on unresolved issues in the Puerto Rico Lawsuit. And in particular, any concerns about the Puerto Rico Court's jurisdiction—either personal over Mey or subject matter over the Puerto Rico Lawsuit—should be resolved in Puerto Rico.[10]

Perhaps most informative of all, however, is the fact that Mey's response has completely *ignored* a fundamental aspect of this extraordinary case—that is, the Puerto Rico Lawsuit was filed well *before* the West Virginia Lawsuit. Like the District Court, Mey claims on appeal that an *ongoing* state court proceeding can be enjoined under the AIA's second exception if the prosecuting party allegedly filed the state court lawsuit in "bad faith," or if the state court litigation is deemed to be "burdensome, vexatious, and intended to deprive [a party] of her day in court in the proper venue." *See* JA678.[11]

---

[10] As Mey admits, *see* Br. of Appellee 15, this was the parties' expressed *agreement* in the Puerto Rico Lawsuit *before* Mey filed the West Virginia Lawsuit. JA350-351.

[11] The P&M Defendants vociferously disagree with Mey's bald assertion that the Puerto Rico Lawsuit was filed in "bad faith," or that it is "burdensome, vexatious, and intended to deprive Ms. Mey of her day in court in the proper venue." JA678.

But the cases Mey cites in support of this argument would create a "standardless" standard and do not pan out in her favor. Rather, in each instance, the state court lawsuit (deemed "vexatious," "burdensome," or filed in "bad faith") post-dated and threatened *ongoing* federal court litigation (mainly, multi-district litigation involving administration of complex settlements). *See In re Baldwin-United Corp.*, 770 F.2d 328, 337-38 (2d Cir. 1985) (federal MDL court injunction of later-filed state court lawsuits was "necessary or appropriate in aid of the federal court's jurisdiction" because "[t]he existence of multiple and harassing actions by the states . . . frustrate[d] the district court's efforts to craft a settlement in the multidistrict litigation before it"); *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1332 (5th Cir. 1981) (federal MDL court injunction of later-filed state court lawsuits was necessary under AIA's "protection" exception because later-filed suits threatened "federal judgments that approve some of the settlements and that control the further litigation . . . [of the] cause of action"); *In re Diet Drugs Prods. Liab. Litig.*, 369 F.3d 293, 306 (3d Cir. 2004) ("*In re Diet Drugs II*") (federal MDL court injunction of later-filed state court case was necessary under "in aid of jurisdiction" exception since the district court retained jurisdiction to enforce settlement).

Here, the exact opposite is true: the Puerto Rico Lawsuit began well in *advance* of the West Virginia Lawsuit. And the West Virginia Lawsuit was filed by a disgruntled party (*i.e.*, Mey) seeking refuge in her preferred forum *solely* to derail the progress and

viability of the *ongoing* Puerto Rico Lawsuit.[12] Simply put, there is no basis to issue an anti-suit injunction of *ongoing* state court litigation under the AIA's second exception. *See, e.g.*, *Phillips v. Chas. Schreiner Bank*, 894 F.2d 127, 131-32 (5th Cir. 1990) (finding that Anti-Injunction Act prohibited federal court from issuing a preliminary injunction that interfered with state court foreclosure proceedings pending at the time of the injunction); *Ungar v. Mandell*, 471 F.2d 1163, 1165 (2d Cir. 1972) (finding that Anti-Injunction Act prohibited a preliminary injunction which would have prevented the sale of property previously the subject of a state foreclosure proceeding); *Bradley v. Fed. Nat'l Mortg. Ass'n*, 2011 WL 5320746, at *3 (N.D. Ga. Sept. 28, 2011) ("[T]his Court does not have jurisdiction over any action brought in state court and cannot enjoin a state court action for eviction," and is "absolutely prohibited . . . from granting such relief").

\* \* \* \* \*

In *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281 (1970)—a case that Mey virtually ignores—the Supreme Court recognized that the AIA "is an absolute prohibition . . . against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions." 398 U.S. 281, 286 (1970). This prohibition protects the "fundamental constitutional independence of the States and their courts[.]" *Id.* That is why "[p]roceedings in state courts should normally

---

[12] Even if "many courts" have "considered bad faith when weighing the propriety of an anti-suit injunction," *see* Br. of Appellee 38—and the P&M Defendants take the position that there has been *no* bad faith on their part—no court has enjoined an *ongoing* state court case *solely* due to "bad faith" and without a direct link to an AIA exception.

14

be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately this Court." *Id.* Above all, in order to safeguard our Nation's revered system of federalism, the AIA's *three* exceptions cannot be "enlarged by loose statutory construction." *Id.*

With these principles in mind, Mey's spanning and evasive response fails to offer a legally sound explanation *why* an injunction should be issued under the AIA's second exception. And that is highly problematic for Mey—an injunction can *only* be issued under the AIA if the *movant* has made "a strong and unequivocal showing" that such relief is necessary. *Bechtel Petroleum, Inc. v. Webster,* 796 F.2d 252, 253-54 (9th Cir. 1986). Mey failed to meet this burden in the District Court, and she fails to meet it on appeal.

Finally, and to reiterate once more, if this Court harbors "*any* doubt" regarding the propriety of the District Court's Anti-Suit Injunction, then such doubts "must be resolved *against* the finding of an exception" to the AIA's prohibition. *See Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 643 (1977) (emphasis added).[13] That is especially so because the District Court's ruling here amounts to "judicial improvisation" and is a *post hoc* attempt at creating a "fourth" extra-statutory exception to the AIA's prohibition against enjoining state court proceedings. *See, e.g., Amalgamated Clothing Workers of Am.*

---

[13] The Supreme Court's decision in *Vendo Co.* is yet another piece of controlling precedent that Mey glosses over and fails to address in her 48-page response brief.

*v. Richman Bros.*, 348 U.S. 511, 514 (1955) ("Congress made clear beyond cavil that the [AIA] prohibition is not to be whittled away by judicial improvisation[.]").[14]

## III.    Mey is mistaken—security was required under Rule 65(c).

Mey says the District Court did not reversibly err in ruling that "[s]ecurity will not be required as [the P&M Defendants] will not suffer financial burden in compliance

---

[14] After utterly failing to explain *why* or *how* the District Court's Anti-Suit Injunction falls within the scope of the AIA's second narrow exception, Mey devotes five additional pages of her response brief to explaining why "the equities . . . counsel in favor of enjoining the Puerto Rican proceedings." *See* Br. of Appellee 40. In so doing, Mey acknowledges that "the fact that an injunction *may issue* under the Anti-Injunction Act does *not* mean that it *must* issue," *see Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 151 (1988) (emphasis added), and otherwise that "principles of comity, federalism, and equity always restrain federal courts' ability to enjoin state court proceedings," *see In re Diet Drugs II*, 369 F.3d at 306. Here, this Court need not conduct an unnecessary analysis of whether the equities support the District Court's Anti-Suit Injunction because it plainly does not fall within one of the AIA's three narrow exceptions. *See Atlantic Coast Line*, 398 U.S. at 287 (recognizing that "any injunction against state court proceedings otherwise proper under general equitable principles *must* be based on one of the specific statutory exceptions to [the AIA] if it is to be upheld" (emphasis added)).

Assuming, for the sake of argument, the District Court's Anti-Suit Injunction falls within the AIA's second exception (which it does not), the equities actually weigh *against* enjoining the *ongoing* Puerto Rico Lawsuit. *First*, despite Mey's claim that "the Puerto Rican action is legally improper," *see* Br. of Appellee 40, as discussed *supra*, that is a question for the Puerto Rico Court to decide, not the District Court. *Second*, Mey's regurgitated argument that "*in personam* state court proceedings may be enjoined where a litigant's 'right, if any, to litigate the issues in a state court appears more theoretical than real'" is also unavailing. *See* Br. of Appellee 42. The leading case Mey quotes— *Caulder v. Durham Housing Authority*, 433 F.2d 998, 1002 (4th Cir. 1970)—is factually inapposite; the state court action was instituted *after* the federal court action. *Third*, Mey has not been harmed by having to defend the Puerto Rico Lawsuit, nor is it "vexatious" or "harassing." *Cf.* Br. of Appellee 44.  Rather, just like the many defendants that Mey has sued over the years as a TCPA "consumer advocate," she should be required to defend—in Puerto Rico—the claims brought against her by the Puerto Rico Law Firm.

with such injunctive relief." JA679; *but see, e.g.*, *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411 (4th Cir. 1999). Mey claims that is so for two reasons: (1) "Rule 65 does not apply to injunctions issued under the All-Writs Act," *see* Br. of Appellee 46; and (2) "even if Rule 65 does apply, P&M Law failed to identify any risk of financial harm incidental to the injunction," *id.* at 47. Neither of Mey's arguments pass "go."

As to the former contention, Mey cites *In re Baldwin-United* for the unfettered proposition that "injunctions issued under the All-Writs Act are not required to comply with Rule 65's requirements." *See* Br. of Appellee 46. Upon closer inspection, it is apparent that the Second Circuit was opining in *In re Baldwin-United* that "Rule 65 does not apply to injunctions issued under the All-Writs Act against *non-parties* whose actions would impair the court's jurisdiction." *See* 770 F.2d at 339 (emphasis added). That is not the case here, of course—the District Court's Anti-Suit Injunction is directed at *parties* to the West Virginia Lawsuit (*i.e.*, the three P&M Defendants).[15]

Instead, as federal courts have recognized, a plaintiff (like Mey) who seeks issuance of a preliminary injunction under the AIA is obliged to "satisfy the requirements for obtaining an injunction, pursuant to Rule 65(c) of the Federal Rules of Civil Procedure." *See Baaith v. Bank of Am., N.A.*, 2017 WL 11068544 (N.D. Ga. July

---

[15] Along these lines, Mey's reliance on this Court's 2013 decision in *Ackerman v. ExxonMobil Corp.*, 734 F.3d 237, 257 (4th Cir. 2013), is particularly questionable. While the *Ackerman* decision acknowledged—in a footnote—that *some* "courts have recognized that injunctions [under the All-Writs Act] exist outside of the traditional injunction framework governed by Fed. R. Civ. P. 65," this Court did *not* conclude that Rule 65(c)'s bond requirement does *not* apply to injunctions issued under the AIA.

21, 2017). As the United States Court of Appeals for the Fifth Circuit explained in *Phillips v. Charles Schreiner Bank*—a case decided under the AIA—it is "reversible error" if a district court "fail[s] to follow [R]ule 65(c), which directs that '[n]o . . . preliminary injunction shall issue except upon the giving of security by the applicant . . . for the payment of such costs and damages as may be incurred or suffered by any *party* who is found to have been wrongfully enjoined.'" *See* 894 F.2d 127, 131 (5th Cir. 1990) (emphasis added). These sound authorities summarily dispense with Mey's hollow argument that "no bond was required" under Rule 65(c). *See* Br. of Appellee 46.

Meanwhile, Mey's second argument fares no better than the first. Mey chastises the P&M Defendants for "fail[ing] to identify any risk of financial harm incidental to the injunction." *See* Br. of Appellee 47. But that is *not* the point—as the P&M Defendants have asserted, "[a]lthough the district court has discretion to set the bond *amount* 'in such sum as the court deems proper,' it is not free to *disregard the bond requirement altogether.*" *See Hoechst Diafoil*, 174 F.3d at 421 (quoting Fed. R. Civ. P. 65(c)) (emphasis added). As such, and contrary to well-established circuit precedent, *see Hoechst Diafoil*, 174 F.3d at 421; *District 17, UMWA v. A & M Trucking, Inc.*, 991 F.2d 108, 110 (4th Cir. 1993), the District Court said security was "*not* required," JA679 (emphasis added). This alone amounts to reversible error. *See Hoechst Diafoil*, 174 F.3d at 421.[16]

---

[16] Mey's alternative request for relief—*i.e.*, that "[i]f this Court determines that a bond is required in the amount of $0 or some other nominal amount, then it should remand with direction to impose such a bond without vacating the injunction," *see* Br. (Continued)

## CONCLUSION

Pursuant to the foregoing, this Court should conclude that Mey lacks Article III standing to sue in federal court and thus **REVERSE** the District Court's Anti-Suit Injunction on that basis. Alternatively, if Mey does possess Article III standing to sue in federal court, then the District Court's Anti-Suit Injunction should nevertheless be **REVERSED** and this case **REMANDED** for further proceedings.

<div style="margin-left:40%">

Respectfully submitted,

*/s/ Richard W. Epstein*
Richard W. Epstein
GREENSPOON MARDER LLP
200 East Broward Blvd, Suite 1800
Fort Lauderdale, FL 33301
richard.epstein@gmlaw.com

Jeffrey Gilbert
GREENSPOON MARDER LLP
600 Brickell Avenue, Suite 3600
Miami, FL 33131
jeffrey.gilbert@gmlaw.com

Jared M. Tully
Blake N. Humphrey
FROST BROWN TODD LLP
500 Virginia Street E, Suite 1100
Charleston, WV 25301
jtully@fbtlaw.com
bhumphrey@fbtlaw.com

*Counsel for William Pintas, P&M Law Firm,*
*LLC and P&M Law Firm (PR), LLC*

</div>

---

of Appellee 48—is an unavailable remedy here. As Judge King explained in *Hoechst Diafoil*, an injunction that fails to comply with Rule 65(c)'s mandatory security requirement must be reversed. *See* 174 F.3d at 421. "[O]n remand," if the Court "grant[s] . . . [the moving party's] request to continue [the] injunctive relief, it must require [the moving party] to post an appropriate bond," even if nominal. *Id.*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[ X ] this brief contains [*5,798*] words.

[  ] this brief uses a monospaced type and contains [*state the number of*] lines of text.

2.    This brief complies with the typeface and type style requirements because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 365*] in [*14pt Garamond*]; *or*

[  ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated:  <u>August 30, 2024</u>         <u>/s/ Richard W. Epstein</u>
                                    *Counsel for Appellants*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 30th day of August, 2024, I caused this Reply Brief

of Appellants to be filed electronically with the Clerk of the Court using the CM/ECF

System, which will send notice of such filing to the following registered CM/ECF users:

> Ryan M. Donovan
> Andrew C. Robey
> HISSAM FORMAN DONOVAN RITCHIE PLLC
> Post Office Box 3983
> Charleston, WV 25339
> (681) 265-3802
> *Counsel for Appellee*

> /s/ *Richard W. Epstein*
> *Counsel for Appellants*